Filed:  March 14, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-4208
(CR-97-919)

United States of America,

Plaintiff - Appellee,

versus

Wiley Gene Wilson,

Defendant - Appellant.

O R D E R

The court amends its opinion filed March 7, 2000, as follows:

On the cover sheet, section 2 -- the caption is corrected to read "United States of America v. Wiley Gene Wilson."

On the cover sheet, section 7, line 1 -- counsel's name is corrected to read "Carolyn A. Dubay."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4208

WILEY GENE WILSON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CR-97-919)

Submittted: February 23, 2000

Decided: March 7, 2000

Before WILKINSON, Chief Judge, WIDENER, MURNAGHAN,
WILKINS, NIEMEYER, LUTTIG, WILLIAMS, MICHAEL,
MOTZ, TRAXLER, and KING, Circuit Judges.

_____

Vacated by published opinion. Judge Michael wrote the opinion, in
which Chief Judge Wilkinson, Judge Widener, Judge Murnaghan,
Judge Wilkins, Judge Niemeyer, Judge Luttig, Judge Williams, Judge
Motz, Judge Traxler, and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Carolyn A. Dubay, Christopher G. Browning, Jr.,
HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant.
William Earl Day, II, Assistant United States Attorney, Florence,

South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Florence, South Carolina, for Appellee.

_____

**OPINION**

MICHAEL, Circuit Judge:

Wiley Gene Wilson appeals his conviction and sentence for possessing a firearm while he was a felon and fugitive, in violation of 18 U.S.C. § 922(g)(1), (2). Wilson argues that the district court erred in admitting the firearm into evidence over his objection that it had been obtained as the result of an unconstitutional automobile stop. Because we agree that the firearm should have been excluded, we vacate Wilson's conviction.

I.

This appeal turns on the undisputed facts that led a policeman to stop Wilson's car in South Carolina on April 2, 1997. The story, however, begins a few months earlier, on August 16, 1996, when Wilson was released from the Nevada State Prison after completing a sentence for larceny and burglary. He went immediately to live with his sister and brother-in-law in Crystal City, Missouri, where he resumed serving a term of supervised release on an earlier federal conviction for escape from a halfway house. On August 24, 1996, soon after he arrived in Missouri, Wilson got into a dustup with his relatives, and he was arrested and jailed for disturbing the peace. Wilson was released after a few hours, and two days later (August 26, 1996) he went to Las Vegas. On October 10, 1996, a federal warrant was issued for his arrest on the charge that he had violated his supervised release by failing to report the August 1996 arrest to his probation officer and by leaving Missouri without permission.

Wilson managed to evade the authorities and eventually wound up in Pageland, South Carolina, where his wife, Kimberly, and son were living. After Wilson arrived in South Carolina, he decided to buy his wife a car, and on March 31, 1997, he bought a used 1984 Mercury Cougar from a car lot in Monroe, North Carolina. The bill of sale con-

2

veyed title to Wiley Gene Wilson and Kimberly Ann Wilson. As required by North Carolina law, the dealer placed a temporary (paper) license tag on the car. Handwritten on the bottom of the tag were its expiration date and the car's make and vehicle identification number. See N.C. Gen. Stat. § 20-79.1.

Two days after the purchase, on the evening of April 2, 1997, Wilson was driving the Cougar on State Route 151 near Pageland, South Carolina. He was on his way to a restaurant with his wife, his son, and his son's girlfriend. A Pageland policeman, Alex McLemore, who was on patrol that evening, happened to overtake the Cougar as it was traveling along Route 151. Officer McLemore noticed that the car had a North Carolina temporary tag, and he began following it. It was dark, and Officer McLemore had his headlights on. The officer followed behind the Cougar for a quarter to half of a mile, but he was unable to read the expiration date on the tag. The officer admitted that he never saw anything illegal about the tag or the operation of the car. There was no evidence that the tag was concealed, improperly displayed, smudged, or faded by age. Solely because he could not read the handwritten expiration date "in the bottom little corner of the paper tag," Officer McLemore signaled for the driver of the Cougar to pull over.

Wilson stopped, got out of the car, and met the officer midway between the two cars. Officer McLemore asked for Wilson's driver's license; Wilson first claimed he did not have a license and later said he had lost it. The officer then went to the front passenger side of the Cougar, where Kimberly Wilson gave him the bill of sale for the car. When the officer saw that Wiley Gene Wilson and Kimberly Ann Wilson were listed as the owners, he asked (Mr.) Wilson if he was Wiley Gene Wilson. Wilson denied that he was, saying that he was Boyd Wilson. Kimberly Wilson, however, confirmed that Wilson was indeed Wiley Gene Wilson. Thereafter, while Officer McLemore's dispatcher was attempting to run a computer check on Wilson, Kimberly Wilson suddenly recognized the officer from a prior meeting. Mrs. Wilson reminded Officer McLemore that she had talked with him in January 1997 when her son was missing and believed to be somewhere in the West with his father, Wiley Wilson. The officer then recalled that he had run a computer check on Wilson on the prior occasion and had discovered a warrant outstanding for his arrest.

3

Upon realizing that Wilson was a fugitive, Officer McLemore arrested him for driving without a license and without liability insurance. Officer McLemore then searched the Cougar and found a loaded 9mm handgun under the driver's seat.

Wilson was indicted for illegally possessing a firearm as a felon and fugitive. At trial he moved to suppress the 9mm handgun on the ground that it was the fruit of an unconstitutional stop. The stop was unconstitutional, Wilson argued, because Officer McLemore did not see or suspect any illegal activity. The district court denied the motion, and the jury voted to convict. Wilson now appeals.

II.

A.

Because an automobile stop is a seizure of a person, the stop must comply with the Fourth Amendment's requirement "that it not be `unreasonable' under the circumstances." Whren v. United States, 517 U.S. 806, 809-10 (1996). As a result, such a stop "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993). There are, of course, certain limited circumstances where suspicionless stops are permissible. See, e.g., Michigan Dep't of State Police v. Sitz, 496 U.S. 444 (1990) (upholding constitutionality of suspicionless vehicle stop at highway sobriety checkpoint); United States v. Martinez-Fuerte , 428 U.S. 543 (1976) (same, border patrol checkpoint). In any case, the Supreme Court has made clear that the Fourth Amendment does not allow a random, discretionary automobile stop that is unsupported by articulable, reasonable suspicion of a violation. See Delaware v. Prouse, 440 U.S. 648, 663 (1978); United States v. Villamonte-Marquez , 462 U.S. 579, 592 (1983) ("Random stops without any articulable suspicion of vehicles away from the border are not permissible under the Fourth Amendment . . . .").

The leading case of Delaware v. Prouse presented facts strikingly similar to those before us today. In that Supreme Court case the patrolman testified that he simply "saw a car in the area and wasn't answering any complaints, so [he] decided to pull them off" to check

4

driver's license and registration. <u>Delaware v. Prouse</u>, 440 U.S. at 651. Before making the stop the officer had observed neither "traffic or equipment violations nor any suspicious activity." <u>Id.</u> at 650. Upon walking up to the stopped car, the officer saw marijuana in plain sight on the floorboard, and he arrested one of the occupants. The Supreme Court did not mince words in holding that the suspicionless stop violated the Fourth Amendment:

> When there is not probable cause to believe that a driver is violating any of the multitude of applicable traffic and equipment regulations -- or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered -- we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver . . . would be more productive than stopping any other driver. This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.

<u>Prouse</u>, 440 U.S. at 661 (citation omitted).

The same "standardless and unconstrained discretion" that the Fourth Amendment forbids was at work when Officer McLemore signaled for Wilson to stop his car. The facts and circumstances reveal that the officer did not have a reasonable suspicion-- in fact, the officer testified that he had no suspicion at all -- that Wilson was driving without a license, operating an unregistered vehicle, or otherwise violating the law. There was nothing illegal about the operation of the vehicle, and nothing appeared illegal about the temporary tag. It was dark, and both cars were moving. Although Officer McLemore "could not see the written-in expiration date on the tag," that appears to have been a function of the darkness and the small space provided for writing in the date. There is no evidence that the temporary tag was illegible or in any way obliterated, smudged, or faded. <u>Cf. State v. Hudson</u>, 407 S.E.2d 583, 587 (N.C. Ct. App. 1991) (faded numbers suggested that tag was more than thirty days old). There is no evidence that the tag lacked any required information, <u>United States v. Hill</u>, 131 F.3d 1056, 1060 (D.C. Cir. 1997), that it was improperly displayed, <u>United</u>

5

States v. Dexter, 165 F.3d 1120, 1124-25 (7th Cir. 1999), or that it was concealed in any way, United States v. McSwain, 29 F.3d 558, 560 (10th Cir. 1994). Wilson was pulled over solely because Officer McLemore could not read the handwritten expiration date "in the bottom little corner of the paper tag" as he drove behind Wilson after darkness had fallen. An objective assessment of the facts and circumstances of this stop compels the conclusion that the officer lacked any articulable, reasonable suspicion that a violation had occurred. Simply put, he saw nothing wrong, and he suspected nothing. Upholding a stop on these facts would permit the police to make a random, suspicionless stop of any car with a temporary tag. The Fourth Amendment does not afford the police such unbridled discretion. See Prouse, 440 U.S. at 663.

B.

The government argues that South Carolina law authorizes the police to stop any car with temporary tags to determine whether the owner is in compliance with the state's requirement that permanent tags be obtained within thirty days of purchase. The government, however, cannot point to any statute, regulation, or court decision from South Carolina that authorizes such an investigatory stop. The government relies solely on our conclusory statement in United States v. McDonald, 61 F.3d 248, 254 (4th Cir. 1995), that under South Carolina law the presence of temporary tags on a car "entitle[s] [police] to conduct an investigatory stop in order to determine whether the car's owner [is] in violation of state law requiring permanent tags within thirty days of a vehicle's purchase." The problem with McDonald is that it cited no authority for the purported statement of South Carolina law (for that matter, neither did the United States cite any authority when it briefed that case). We have made an independent search, and we find nothing in South Carolina's law to support the statement in McDonald. At this point, we can only conclude that McDonald misstated the law of South Carolina.[1] Of course, any state

_____

[1] This case was argued before a panel of this court on October 29, 1999. Because the panel (like the district court) was bound by McDonald, the members of this court in regular active service have, by unanimous consent, authorized this opinion to be issued en banc. Accordingly, McDonald is overruled to the extent it relied on a law that, as it turns out, did not exist.

6

law that authorized a search or seizure would be subject to the requirements of the Fourth Amendment. See United States v. Manbeck, 744 F.2d 360, 382 (4th Cir. 1984) (holding that statute authorizing customs officials to board vessels "must be interpreted in a manner consistent with limitations imposed by the Fourth Amendment").

## C.

The Fourth Amendment does not allow a policeman to stop a car just because it has temporary tags. Because Officer McLemore did not have any articulable, reasonable suspicion of unlawful conduct, he had no justification for stopping Wilson's car. Because the stop was illegal, the gun found during the subsequent search of the car should have been excluded from Wilson's trial. His conviction is therefore vacated.[2]

VACATED

_____

[2] In light of this disposition it is unnecessary for us to consider Wilson's other arguments.