UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　*Plaintiff-Appellee,*

v.　　　　　　　　　　　　　　　　No. 03-4425

MARK Q. DEATON,

　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-02-51)

Submitted: December 31, 2003

Decided: January 23, 2004

Before LUTTIG, WILLIAMS, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

William C. Gallagher, CASSIDY, MYERS, COGAN, VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Appellant. Thomas E. Johnston, United States Attorney, Randolph J. Bernard, Robert H. McWilliams, Jr., Assistant United States Attorneys, Wheeling, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Mark Deaton was convicted of stealing firearms from a federal firearms licensee, 18 U.S.C. § 922(u) (2000), possession of stolen firearms, 18 U.S.C. § 922(j) (2000), and being an armed career criminal in possession of firearms, 18 U.S.C. § 922(g)(1) (2000). He was sentenced as an armed career criminal to 120 months on each count. The sentences run concurrently. Deaton appeals. Counsel has filed a brief raising two issues. Deaton moves to file an addendum to the brief raising additional issues. We grant the motion to file the addendum and affirm.

I

On April 27, 2002, someone broke through the wall of the Outdoor Store, a retail establishment in Wheeling, West Virginia. Nine firearms were stolen.

Prior to the robbery, James Leonard met Deaton at a soup kitchen in Martins Ferry, Ohio, and invited him to stay at his home. Leonard drove Deaton to a place known as Cherry Hill, where Deaton retrieved some belongings, including a red bag containing a hammer and chisel, from beneath an abandoned car seat. Leonard testified that Deaton always had the red bag with him. Deaton bragged to Leonard and Maranda Burch, who also lived with Leonard, that he could get any jewelry he wanted. He mentioned guns to Leonard. Deaton even said that he intended to break into the Outdoor Store on the next foggy night and to gain access using a hammer and chisel.

On April 28, Deaton contacted William Linde and informed him that he had guns for sale, including assault-type weapons. Linde reported the conversation to authorities, and police officers investigating the matter went to the Cherry Hill location and retrieved two of

the stolen weapons from beneath an abandoned car seat. Ohio authorities notified police in Wheeling that two of the stolen guns had been recovered and, based on their investigation, identified Deaton as a suspect.

Also on April 28, Daniel Yanok noticed a shirtless man carrying a red bag and a firearm with fabric draped over it. Yanok testified that he got a clear look at the man's face. Yanok followed the man to a vacant lot, where the man was pacing. Again, Yanok could clearly see the man. Yanok briefly left the scene. When he returned, the man was fumbling through a red bag. Yanok immediately reported the incident to the police. Wheeling police officers went to the vacant lot and recovered five more of the stolen guns. Deaton was detained.

Approximately three weeks later, Yanok went to the police station, where he selected Deaton's photograph from a photographic line-up. In October, Yanok accompanied officers to the area where he had seen the man carrying the gun, and officers recovered the last two stolen firearms.

II

Deaton first claims that the district court erred when it denied his Fed. R. Crim. P. 29 motion for judgment of acquittal. He attempts to cast doubt on the credibility of various witnesses, especially Yanok. Specifically, Deaton contends that Yanok's identification of him was suspect because Yanok initially described him as having a goatee and not wearing a shirt. Deaton did not have a goatee and was wearing a blue shirt when police detained him.

After a de novo review, *see United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001), we conclude that, viewing the evidence in the light most favorable to the United States, substantial evidence supports the verdict. *See Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Stewart*, 256 F.3d 231, 250 (4th Cir. 2001), *cert. denied*, 535 U.S. 977 (2002). First, Yanok accurately described Deaton, with the exception of the goatee and the shirt.* Yanok testi-

---

*Deaton could have retrieved a shirt from the bag he was carrying when Yanok saw him and put the shirt on before the police entered.

fied that he had a clear view of the man with the gun who was carrying a red bag. Yanok did not hesitate when selecting Deaton's photograph from a photo array. Yanok testified unequivocally that Deaton was the man he saw on April 28. Finally, police found seven of the stolen guns in the area where Yanok had seen the man. In light of this, Yanok's statement that the man appeared to have a goatee and was not wearing a shirt is of little significance.

Other evidence supports the conviction. The day after the robbery, Deaton informed Linde that he had guns for sale. Officers recovered two stolen guns from beneath an abandoned car seat in Cherry Hill, where Deaton had retrieved some of his possessions before going to Leonard's home. Deaton announced his intention to commit a robbery and specifically mentioned the Outdoor Store. He also stated that he intended to break into the store using a hammer and chisel. The robber gained entry to the Outdoor Store by knocking a hole in the wall.

In light of this evidence, all of which points to Deaton as the robber, Deaton's attack on the scant evidence that might be considered exonerating is wholly unavailing. Substantial evidence supports the guilty verdict, and the district court correctly denied the Rule 29 motion.

III

Deaton was sentenced as an armed career criminal. On appeal, as below, he contends that a 1992 breaking and entering conviction in Ohio was not a violent felony for purposes of armed career criminal status. *See* 18 U.S.C. § 924(e) (2000); *U.S. Sentencing Guidelines Manual* § 4B1.4 (2002). The conviction was for a violation of Ohio Rev. Code Ann. § 2113(A), which, at the time of Deaton's conviction, was a fourth degree felony punishable by a term of imprisonment of six months to over one year.

The relevant statute provides, "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense . . . or any felony." Ohio Rev. Code Ann. § 2113(A). The statute includes no conduct that would not constitute burglary under § 924(e), and we conclude that the breaking and entering was generic burglary. The district court properly counted the

conviction as a violent felony for purposes of § 924(e). *See Taylor v. United States*, 495 U.S. 575, 602 (1990).

IV

In his addendum to his formal brief, Deaton contends that Count III of the indictment, charging a violation of § 922(g), was deficient. We have carefully reviewed the indictment and discern no reason to reverse Deaton's § 922(g) conviction on the basis of a flawed indictment. *See United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003) (setting forth requirements for valid indictment); *United States v. McDonald*, 61 F.3d 248, 252 (4th Cir. 1995) (stating "[r]elief from an erroneous indictment after a case has been decided by a petit jury is rarely granted"), *overruled on other grounds by United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000).

V

We accordingly affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*