# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00632-COA

**TERRANCE DEMARCO WILSON A/K/A**        **APPELLANT**
**TERRENCE WILSON A/K/A TERRANCE**
**WILSON**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/29/2024 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: STACY L. FERRARO |
| | W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | MATTHEW LOUIS BARTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 02/17/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.	Terrance Wilson was convicted of possession of a firearm as a felon.	On appeal, Wilson argues that the trial court erred by denying his motion to suppress evidence obtained during a traffic stop.	Because law enforcement lacked reasonable suspicion to initiate the traffic stop, all evidence against Wilson should have been suppressed.	Therefore, we reverse Wilson's conviction and render a judgment of acquittal.

## FACTS AND PROCEDURAL HISTORY

¶2.	In June 2022, Officer Dan Russell of the Hernando Police Department (HPD)

observed a Ford Explorer on Interstate 55 that displayed a temporary tag. Russell followed behind the vehicle for more than a minute, and the driver was not speeding or committing any other traffic violations. Nonetheless, Russell initiated a traffic stop. Jamie Saulsberry was driving the vehicle, her boyfriend, Wilson, was in the front passenger seat, and her brother was in the backseat.

¶3. As Russell approached the passenger side of the vehicle, he detected an odor of marijuana. He requested Saulsberry's license and proof of insurance, and Wilson also provided his identification along with the vehicle's title.[1] Russell then instructed all three occupants to exit the vehicle.

¶4. An initial search of the vehicle revealed a misdemeanor amount of marijuana in the glove compartment, and a subsequent search uncovered a nine-millimeter handgun lodged between the front passenger seat and the center console. After acknowledging his *Miranda*[2] rights, Wilson admitted that the marijuana belonged to him, but he denied ownership or possession of the gun.[3] Based on the location of the handgun and inculpatory statements Wilson made to police, Wilson was charged with possession of a firearm by a felon.

¶5. Prior to trial, Wilson moved to suppress all evidence obtained during the traffic stop, arguing that Russell lacked reasonable suspicion to initiate the stop. At the suppression

---

[1] Although the vehicle was not registered in Wilson's name, he claimed ownership. Saulsberry later testified that she and Wilson "shared use" of the vehicle.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Saulsberry testified that she had purchased the handgun prior to meeting Wilson and had owned it for approximately three years.

hearing, Russell testified that he could see the temporary tag before initiating the stop. Russell acknowledged that the tag was not "obscured or . . . difficult to read or dirty or anything like that." Nonetheless, Russell stated that the tag "wasn't a verifiable tag." Russell acknowledged that he did not actually attempt to verify the tag while following the vehicle. He stated that based on his "training and experience," he knew that "temporary tags are not verifiable through [HPD's] database." Russell testified that, in his view, he had "probable cause or reasonable suspicion" to stop *any* vehicle that displayed "a drive out or temporary tag." In addition, Russell stated that he wanted "to verify that the vehicle wasn't stolen and that the occupants, whether they were Mississippi or Tennessee residents, . . . were compliant with the state law as far as the tag goes." Wilson believed the law allowed a car buyer "seven to ten business days to have a tag on [the] vehicle and have it registered."[4] Following the suppression hearing, the trial court denied Wilson's motion to suppress, and the case proceeded to trial.

¶6.    At the close of the State's case-in-chief, Wilson moved for a directed verdict, which

---

[4] The record does not establish whether the temporary tag was from Mississippi, Tennessee, or another state. Wilson told Russell that he and Saulsberry lived in Tennessee, but Russell did not question Wilson about the temporary tag or where or when it was issued. Mississippi law provides that a temporary tag issued by a Mississippi motor vehicle dealer is valid for seven working days; "however, if the temporary tag . . . is issued to a nonresident of the State of Mississippi, the temporary tag or plate shall be valid for the number of days within which the nonresident is required to obtain a permanent motor vehicle license tag or plate by the laws of the nonresident's state of residence." Miss. Code Ann. § 27-19-40(2) (Rev. 2022). On the date of the traffic stop in this case (June 19, 2022), Tennessee law provided that dealer drive-out tags were valid for thirty days, which was extended to sixty days effective July 1, 2022. *See* Tennessee Department of Revenue, *Dealer Drive-Out Tags*, https://www.tn.gov/revenue/title-and-registration/ez-dealer-tags.html (last visited February 13, 2026).

the trial court denied. After calling Saulsberry as a witness, Wilson rested and renewed his motion for a directed verdict, which was again denied.

¶7. The jury found Wilson guilty, and the trial court sentenced him to ten years in custody without eligibility for parole. Wilson filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶8. Wilson argues that the evidence obtained during the traffic stop should have been suppressed because he was illegally seized and detained in violation of the Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution. In contrast, the State argues that Russell permissibly initiated the subject traffic stop solely because Wilson's vehicle displayed a temporary tag.

¶9. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Similarly, Section 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search . . . ." Miss. Const. art. 3, § 23. The Mississippi Supreme Court has stated that "Section 23 provides greater protections to citizens than does the United States Constitution and should be liberally construed in favor of individual citizens and strictly construed against the State." *Sutton v. State*, 238 So. 3d 1150, 1155 (¶15) (Miss. 2018) (brackets and ellipsis omitted). In general, evidence obtained as a result of an unconstitutional search is inadmissible at trial. *Green v. State*, 344 So. 3d 854,

4

857 (¶12) (Miss. 2022). The exclusionary rule also "prohibits 'testimony concerning knowledge acquired during an unlawful search.'" *Marshall v. State*, 584 So. 2d 437, 438 (Miss. 1991) (quoting *Murray v. United States*, 487 U.S. 533, 536 (1988)). The same rule "prohibits the introduction of *derivative* evidence, both tangible and testimonial, that is, the product of the primary evidence, or that is otherwise acquired as a result of the unlawful search, up to the point at which the connection becomes 'so attenuated as to dissipate the taint.'" *Id.* (quoting *Murray*, 487 U.S. at 536).

¶10. Consistent with the Fourth Amendment of the United States Constitution and Section 23 of the Mississippi Constitution, "[a]n officer may make a brief, investigatory stop of a vehicle if the officer has reasonable suspicion to believe that the occupants of the vehicle have been, are currently, or are about to be involved in criminal activity." *Martin v. State*, 240 So. 3d 1047, 1050 (¶9) (Miss. 2017); *see also United States v. Hensley*, 469 U.S. 221, 226-29 (1985) (recognizing that an investigatory stop of an automobile is constitutionally permissible based on reasonable suspicion that the occupants were involved in a completed crime). "Reasonable suspicion must be 'grounded in specific and articulable facts' and 'can arise from an officer's personal observations, a tip by a trusted informant, or even an anonymous tip.'" *Wrenn v. State*, 281 So. 3d 838, 842 (¶13) (Miss. Ct. App. 2018) (quoting *Cooper v. State*, 145 So. 3d 1164, 1168 (¶11) (Miss. 2014)). "Thus, reasonable suspicion is based on something less than the personal observation of a violation of law. Reasonable suspicion is the standard for a stop or search based on suspicious activity that does not yet amount to criminal activity, but which compels an officer to believe that criminal activity has

happened, is happening, or is about to happen." *Martin*, 240 So. 3d at 1051 (¶11).

¶11.    We apply "a mixed standard of review." *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006). "Determinations of reasonable suspicion and probable cause [are] reviewed de novo." *Id.* However, the trial court's findings regarding any underlying "historical facts [are] reviewed under the substantial evidence and clearly erroneous standards." *Id.*

¶12.    The State argues that this Court's decision in *Stanley Wilson v. State*, 358 So. 3d 1069 (Miss. Ct. App. 2022), demonstrates that there was reasonable suspicion for the traffic stop here. In *Stanley Wilson*, a police officer initiated a traffic stop "based upon the lack of a visible license tag displayed on the vehicle, as well as the driver's suspicious behavior," including stopping at a green light and remaining stopped for ten to fifteen seconds. *Id.* at 1073 (¶16). Contrary to the officer's testimony, photographs admitted into evidence showed a clearly displayed temporary or "paper drive-out license tag from a dealership visible on the back windshield of the vehicle." *Id.* at (¶19). However, the officer maintained throughout the hearing that the tag was *not* visible to him when he stopped the vehicle, possibly because of the glare of the bright noonday sun. *Id.* at 1073-75 (¶¶19-21, 24). The trial judge found the officer's testimony credible and found that he had reasonable suspicion to initiate the stop to investigate the apparent lack of a tag. *Id.* at 1074 (¶21). This Court affirmed on appeal, noting that Mississippi statutes require car tags, including temporary tags, to be properly and conspicuously displayed. *Id.* at 1074-75 (¶¶22-25).

¶13.    *Stanley Wilson* is readily distinguishable from the current case. Here, Officer Russell testified that he *was* able to see and read the temporary tag and that the tag was not obscured

in any way. Quite unlike the officer in *Stanley Wilson*, Russell maintained that the *presence* of a visible temporary tag provided reasonable suspicion to initiate a traffic stop. Also, unlike the officer in *Stanley Wilson*, Russell did not claim that the stop was based in whole or in part on any "suspicious behavior" by the driver. To the contrary, Russell acknowledged that he followed the vehicle for a distance and did not observe the driver commit any traffic violations or engage in any other suspicious behavior.

¶14. A paper or temporary tag must be "conspicuously display[ed] . . . in such a manner that it may be easily read." *Gonzales v. State*, 963 So. 2d 1138, 1143-44 (¶23) (Miss. 2007).[5] However, the record here establishes that the subject vehicle's temporary tag *was* clearly displayed, and there is no evidence that the tag in any way failed to comply with the law. Russell initiated the stop solely because the vehicle had a temporary tag—after he had followed the vehicle for a distance but observed *no traffic violations*.

¶15. Based on our own research, it appears that a number of other courts have expressly held that the mere presence of a temporary tag does not give rise to "reasonable suspicion" or authorize an officer to initiate a traffic stop. In *State v. Butler*, 539 S.E.2d 414, 416 (S.C. Ct. App. 2000), the South Carolina Court of Appeals held "that the mere presence of a temporary tag on the back of a car, without more, is insufficient to provide a reasonable suspicion that the driver is violating registration or insurance laws or that the driver is

---

[5] Similar to our decision in *Stanley Wilson*, in *Gonzales* the Supreme Court affirmed the trial judge's finding that there was reasonable suspicion for a traffic stop based on an officer's testimony that he could not see a temporary tag in the vehicle's rear window because the vehicle's windows were "very tinted." *Id.* at 1142, 1144 (¶¶16, 24-25). Here, in contrast, Russell acknowledged that the temporary tag was clearly displayed on the vehicle in a manner that it could be read.

otherwise involved in criminal activity." In *Berry v. State*, 547 S.E.2d 664, 668-69 (Ga. Ct. App. 2001), the Georgia Court of Appeals likewise held that the presence of a temporary tag does not establish reasonable suspicion or justify a stop. The court rejected the officer's suspicion that a vehicle with a temporary tag might be stolen as a "mere inclination or hunch" unsupported by any specific and articulable facts. *Id.*

¶16.    In *People v. Hernandez*, 196 P.3d 806, 807 (Cal. 2008), the California Supreme Court held that an officer may not stop a vehicle displaying a temporary tag "simply because he or she believes that such permits are often forged or otherwise invalid." Rather, "[t]o support a stop the officer must have a reasonable suspicion that the particular permit is invalid. Otherwise, any car with such a permit could be stopped without particularized cause." *Id.* The court held that a stop is not justified based merely on the officer's "experience that temporary permits are often invalid"; rather, there must be some "objective indication" that the particular temporary tag is invalid or that the driver is otherwise violating the law. *Id.* at 809. The court further noted that "[c]ourts from other jurisdictions also seem uniformly to have concluded that permitting officers to stop any car with temporary permits would be to countenance the exercise of the unbridled discretion condemned in *Delaware v. Prouse*, 440 U.S. [648, 663 (1979)]." *Id.* (collecting cases).[6]

_____

[6] In *Prouse*, the United States Supreme Court held that an officer may not initiate a traffic stop solely to check the driver's license and registration when the officer lacks any reasonable suspicion that the driver or a passenger has violated any law. *Prouse*, 440 U.S. at 663. The Court stated: "we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth

¶17. Likewise, in *State v. Lord*, 723 N.W.2d 425 (Wis. 2006), the Wisconsin Supreme Court held that an officer may not initiate a traffic stop "based solely on the display of a temporary license plate." *Id.* at 426-27. In *State v. Childs*, 495 N.W.2d 475, 481-82 (Neb. 1993), the Nebraska Supreme Court also held that a traffic stop based solely on the presence of a temporary tag violates the Fourth Amendment. And in *Clinton v. Garrett*, 49 F.4th 1132, 1141 (8th Cir. 2022), the United States Court of Appeals for the Eighth Circuit reaffirmed "that it is a constitutional violation to stop a vehicle merely because it has a temporary tag without a particularized basis for suspecting the tag is in violation of [state] law." Finally, in *United States v. Wiley Wilson*, 205 F.3d 720, 723-24 (4th Cir. 2000) (en banc), the United States Court of Appeals for the Fourth Circuit held that the mere presence of a temporary tag does not justify the initiation of a traffic stop when the tag is properly displayed and is not "obliterated, smudged, . . . faded," or "concealed." The court put the point succinctly: "The Fourth Amendment does not allow a policeman to stop a car just because it has temporary tags." *Id.* at 724. In contrast, we have identified no decisions holding that it is constitutionally permissible to initiate a traffic stop based solely on the presence of a temporary tag.[7]

¶18. Consistent with the reasoning of other state and federal courts, we cannot accept the

---

Amendment." *Id.* The Court reasoned that the Fourth Amendment does not grant officers "standardless and unconstrained discretion" to make random and arbitrary stops of vehicles. *Id.* at 661.

[7] During oral argument, the State conceded that other state supreme courts have held that stops based on temporary tags were invalid, but the State argued that neither the United States Supreme Court nor the Mississippi Supreme Court has done so.

State's argument that the Fourth Amendment to the United States Constitution and Section 23 of the Mississippi Constitution permit an officer to initiate a traffic stop solely because a vehicle has a temporary tag. Rather, consistent with the United States Constitution and the Mississippi Constitution, a vehicle displaying a temporary tag is not subject to a traffic stop unless the tag is not properly displayed, *see Stanley Wilson*, 358 So. 3d at 1074-75 (¶¶22-25); *Gonzales*, 963 So. 2d at 1143-44 (¶¶23-25), or some other articulable facts give rise to a particularized and reasonable suspicion that the temporary tag is invalid or that the vehicle or an occupant have violated some other law. *Prouse*, 440 U.S. at 663. An officer may not stop a car "just because it has temporary tags." *Wiley Wilson*, 205 F.3d at 724.

¶19. Because Russell admittedly initiated the subject traffic stop solely because the vehicle had a temporary tag, the circuit court erred by denying Wilson's motion to suppress. And because all evidence against Wilson was obtained as a result of that illegal stop, and "there is no remaining evidence to uphold [Wilson's] conviction," we "reverse and render [Wilson's] conviction and sentence." *Trejo v. State*, 76 So. 3d 684, 690 (¶17) (Miss. 2011).[8]

¶20. **REVERSED AND RENDERED.**

**BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. CARLTON, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

---

[8] On appeal, Wilson also argues that the evidence was insufficient to prove venue, that the evidence was insufficient to establish that he possessed the gun, and that a jury instruction on constructive possession misstated the law and misled the jury. Because we reverse and render his conviction for the reasons explained above, we need not address these additional issues.